EUROPEAN & NORTH AMERICAN RAILWAY COMPANY *vs.* E. G. DUNN.

*Reservation. Conveyance—construction of.*

By a resolve approved March 22, 1864, the legislature directed the land agent, after advertising for proposals in the manner therein prescribed, 'to sell the timber and lumber' in controversy, and pay the proceeds thereof, not exceeding $10,000, to the trustees of the Maine Wesleyan Seminary and Female College, the purchaser to have ten years to take it off. The land agent sold without strictly observing the law in relation thereto. In May, 1868, the State conveyed the land, containing the timber, to the plaintiffs, 'subject to all the reservations in' a certain act approved March 24, 1864, one of which reservations included 'all timber, and lumber, and lands, granted and voted by the present or any preceding legislature.' In an action against the defendant to recover the stumpage of the timber in question, which was cut by him, *Held*, That the timber was 'voted' by the resolve of March 22, within the meaning of that term as used in the act of March 24, and was, therefore, excepted from the operation of the deed to the plaintiffs.

Also *held*, that the reservation in the deed to the plaintiffs was absolute, and not dependent upon a valid sale by the land agent.

ON REPORT.

ASSUMPSIT to recover the price of certain stumpage of timber, cut by the defendant on the N. W. & S. E. quarters of T. No. 8,

R. 4, W. E. S. L., in the county of Aroostook, in the winter of 1870–71.

Writ dated Sept. 25, 1871.

The liability of the defendant was admitted; the only question being as to the right of the plaintiffs to receive the money.

The title of the land was admitted to have been in the State under whom both parties claimed.

The plaintiffs introduced in evidence, chapters 401, 146, and 604 of the Special Laws of 1864, 1866, and 1868 respectively; deed from the State to the plaintiffs dated May 13, 1868.

The defendant introduced c. 330, of the resolves of 1864, approved March 22.*

The following record of the doings of the governor and council, dated June 28, 1864.

'The committee of the whole council to whom was referred the communication of the trustees of the Maine Wesleyan Seminary and Female College, and also the communication of Stephen Allen, treasurer of said institution, have had the same under consideration, and report:

---

*Chap. 330, resolves, approved March 22, 1864. *Resolved,* That the land agent, under the instructions of the governor and council, be and he is hereby directed to sell the timber and lumber upon any one-half township of land belonging to the State, not already selected for the permanent school fund, and not otherwise appropriated, after advertising for six months in the State paper, and Bangor Daily Whig, and the paper nearest to where the land is situated; to receive sealed proposals for the timber and lumber on said one-half township of land, in one-eighth sections, and the purchasers to have ten years to take off the said timber and lumber, and no longer. A record of the proposals shall be made and kept in the land office, which shall be open to any one after the day of sale. The proceeds of said sale not exceeding ten thousand dollars net, shall be paid to the trustees of Maine Wesleyan Seminary and Female College; *provided,* that the said trustees shall safely invest the sums so received as a permanent fund for the use and benefit of said seminary and college, the interest only to be annually expended; *and provided further,* that in consideration of this grant, the trustees shall place at the disposal of the governor and council, five perpetual scholarships, giving free tuition in said seminary and college to such persons as may be designated by the governor and council, preference to be given to returned soldiers or their children, or the children of such as have fallen in defense of their country, and always to the indigent and meritorious; *and provided further,* that the trustees of said seminary and college shall raise for the use and benefit of the same, the sum of five thousand dollars.

' That it appears from the communication of said trustees, that at a special meeting of said board, the following vote was passed, to wit: Whereas, by a resolve of the legislature, passed March 22, 1864, and approved the same date, the timber and lumber on one-half township of land was granted to the Maine Wesleyan Seminary and Female College, therefore, voted:

' That the trustees accept the said grant, together with all the conditions of said resolve. It further appears from the communication of said Allen, that five thousand dollars and more has been raised by the trustees of said seminary and college, for the use and benefit of said institution, by donation and subscription, with a view to meeting the condition of said resolve. It therefore appears that the said seminary and college have accepted said grant, with the conditions imposed in the resolve, and .it further satisfactorily appears that said seminary and college has raised the sum of five thousand dollars, one of the conditions contained in the grant. We therefore report that said seminary and college has complied with the conditions specified in the resolve making the grant, and that we recommend that the land agent proceed to make the location, advertise and take such further action in the premises as will secure to said institution the amount secured to it by the terms and conditions of said resolve.'

Also, copies of the proper newspapers containing the following advertisement:

'LAND OFFICE, BANGOR, Oct. 1, 1864.

' In pursuance of a resolve entitled "resolve in favor Maine Wesleyan Seminary and Female College," approved March 22, 1864, and order of council, June, 25, 1864:

' Sealed proposals will be received at the land office, until the twentieth day of April, 1865, at twelve o'clock noon, for the purchase in one-eighth section of the "timber and lumber, for the term of ten years from date hereof, growing upon the northwest and southeast quarters of township numbered eight, in the fourth range of townships, west from the east line of the State, in the county of Aroostook."

'The aggregate sum of all proposals made must produce at least the minimum price of fifty cents per acre, or five thousand five hundred ten dollars for the tracts advertised. Terms cash or approved security.

(Signed)      ·     ISAAC R. CLARK, *Land Agent.*'

And the following report:

'LAND OFFICE, BANGOR, April 21, 1865.

'In pursuance of the resolve referred to in the advertisement contained severally in the Kennebec Journal, Bangor Whig and Courier, and Aroostook Pioneer, sealed proposals have been made and deposited in the land office for the purchase of the timber and lumber upon the northwest quarter and southeast quarter of township numbered eight, range four, west of the east line of the State, for the benefit of the Maine Wesleyan Seminary and Female College, and opened this twenty-first day of April, at 1 o'clock, P. M. (the day advertised being the annual fast), with the following result, viz., E. H. Hayden, southeast one fourth, sixty-three cents per acre; northwest one-fourth, fifty-five cents per acre; Samuel H. Dale, thirty-five cents per acre for the northeast and southwest quarters; Stephen Allen, agent for and in behalf of the Maine Wesleyan Seminary and Female College, seven thousand five hundred dollars, for all timber and lumber growing upon said quarter townships, and is the largest sums offered, and said Allen as agent, for and in behalf of the trustees of said seminary and female college, is, therefore, declared to be the purchaser, to whom or to said trustees the requisite conveyance or lease for removing the " timber and lumber," shall be made for the term of time stipulated in said resolve.

(Signed)      ISAAC R. CLARK, *Land Agent.*'

Chapter 401 of the Special Laws of 1864, approved March 24, 1864, authorized among other things, a transfer to the plaintiffs of 'all the public lands' (among which is that containing the timber in question) 'lying on waters of the Penobscot and St. John rivers, for the uses and purposes set forth in this act' (upon certain con-

ditions which were not performed), '*provided, however*, that there shall be excepted from said conveyance and from the operations of this act, all timber, and lumber, and lands, granted or voted by the present or any preceding legislature,' etc.

The conditions not having been performed by the plaintiffs, the legislature of 1868, by c. 604 of Special Laws, authorized among other things, the governor to execute a deed of the same premises to the plaintiffs, according to the previous c. 401 of 1864, waiving the conditions previously imposed but ' subject to all reservations contained in said act.' And the deed of the governor executed May 13, 1868, in accordance with the act of 1868, conveyed to the plaintiffs, ' all the timber and lands belonging to said State, situated upon the waters of the Penobscot and St. John rivers, to be used by said company to aid in the construction of its contemplated line of railway, as contemplated and provided for in an act entitled, " an act to provide means for the defense of the north-eastern frontier," approved March the twenty-fourth, in the year of our Lord one thousand eight hundred sixty-four, and an act approved February twenty-first, in the year of our Lord eighteen hundred and sixty-six, and subject to all the reservations in, and obligations imposed by said acts, except as therein provided ; and reservations of land required by law for public uses.'

If the plaintiffs did not receive the title by this deed, they were to be nonsuit.

*J. W. Emery & Chas. P. Stetson*, for plaintiffs.

There are no words of grant in the resolve, a naked power or authority only was conferred upon the land agent to sell, he was made the agent of the State for that purpose, with specific instructions how he was to proceed in making the sale.

In such cases the forms imposed by the power or authority must be strictly complied with, cannot be dispensed with, and are incapable of admitting of any substitution or receiving any equivalent. Sug. on Powers, 206-7-8 and 9. *Holmes* v. *Coghill*, 7 Ves. Jr., 506. *Hawkins* v. *Kempt*, 3 East, 410, 440. *Cary* v. *Whitney*, 48 Maine, 525-527.

Where a party acts under a delegated authority the authority must be strictly pursued. *Sargent* v. *Simpson*, 8 Maine 154.

This rule has been applied in a great variety of cases. *Veazie* v. *Mayo*, 45 Maine, 560 ; *Day* v. *Green*, 4 Cush. 433 ; *State* v. *Baring*, 8 Maine, 135 ; *Small* v. *Small*, 136 Maine, 400 ; *Long* v. *Hopkins*, 50 Maine, 318 ; *Lebanon* v. *Griffin*, 45 N. H. 563 ; *Smith* v. *Gates*, 21 Pick. 55 ; *Cate* v. *Cate*, 44 N. H. 213 ; *Morse* v. *Reed*, 28 Maine, 481 ; *Grosvenor* v. *Little*, 7 Grant, 376 ; *Russell* v. *Dyer*, 40 N. H. 173 ; same case, 43 do. 396.

When a party derives a title to property under a particular statute, he must show a rigid compliance with all its provisions. *Brown* v. *Smith*, 1 N. H. 36 ; *Tho. King* v. *Newcomb*, 4 D. & E. R. 368 ; *Macy* v. *Raymond*, 9 Pick. 285.

Where lands have been conveyed by an agent or under an authority given by law, and the title thus derived is set up against the former owner or his assigns, it must be shown that the authority has been strictly pursued. *Thompson* v. *Carr,* 5 N. H. 510.

According to these principles above, it must be held that the doings of the land agent in 1864-5 were not in accordance with the provisions and requirements of the resolve of 1864, and no title to the timber and lumber on the land in question passed from the State by those proceedings.

1. Because it does not appear that the land agent acted under the instructions of the governor and council as provided by act of Feb. 26, 1863, c. 5, § 5.

2. The sale was not for cash, as required by the resolve, but was bid off by Allen, as agent for the female college ; no money was paid, no conveyance was made, the pretended sale was a sham.

3. As no conveyance was made, no title whatever passed from the State to Allen or the college. The doings of the land agent and Allen, if of any account, cannot amount to anything more than a verbal understanding which can avail nothing. *Brown* v. *Dodge*, 32 Maine 167.

The sale authorized by the resolve, was of the timber and lumber upon the half township, with the right to have ten years, with-

in which time to take it off, this includes a right in so much of the soil as is necessary to sustain the timber until taken off, or during that time, this right partakes of the nature of real property, and the rules which govern the title and transfer of such property apply to the sale thereof. A deed was therefore necessary from the agent to Allen, or the college, in order to enable them to take any interest in the property. *Howard* v. *Lincoln*, 13 Maine, 122; *Adams* v. *Briggs*, Iron Co., 7 Cash 367; *White* v. *Foster*, 102 Mass. 378; *State* v. *Patten*, 49 Maine, 383; *Rogers* v. *McPhetres*, 40 Maine, 114.

By the attempted sale by the land agent in 1864-5, nothing passed to Allen, or the college, but the title remained in the State.

The title of the township in question, remaining in the State to the year 1868, passed by the act of March, 1868, and the deed of the governor and council, made in pursuance of the acts of 1864, c. 401, and 1868, c. 604, to the plaintiffs, free from any incumbrance on its timber.

Unless it can be brought within the exception of the act of 1864. 'All timber, lumber, and lands granted and voted by the present or preceding legislature, reserving to the State the right to locate such grants within the present year of our Lord, eighteen hundred and sixty-four, or within the time or times limited therefor in the several acts and resolves granting the same.'

The land now in question was not embraced in that exception, because,

1. There was no grant of any land; there was no grantee named to take the title; the college were not to have or take any interest in the land; it was to have only the whole or a portion of the proceeds, arising from the sale of the timber and lumber on the half township. There is no location required by the resolve; only a sale of the timber and lumber upon some half township not selected for the school fund. The soil was to remain, and did remain, in the State. The exception was intended to apply only to cases where all the preliminaries had been performed, and there remained only a location on the face of the earth, to make the grant perfect.

The word grant implies a conveyance by deed or writing, or something equivalent thereto.    Bouvier's Dic., Tit. Grant.

2.  The land agent was not authorized to select, or set apart, or locate the timber and lumber on a half township, for the benefit of the college ; but only to sell the same, and, from the proceeds, pay over to the college a portion of the money received for the same. As he did not follow the authority given, and the attempted sale was never completed, so as to pass any title to the timber and lumber, all the doings of the land agent were null and void, and the half township, and the title thereto, was left as though no action had been taken by him.

3.  To bring the lumber and timber in this case within the meaning and terms of the exception, the acts of the land agent, necessary for that purpose, should all have been done in 1864, as no time for doing the same was fixed in the resolve.   The only act required of the land agent was a sale.   There was time enough to have given the notices required by the resolve, and to have made the sale in 1864.   All that was necessary to be done by him, to perfect and pass the title should have been done that year. Having failed to do so, the exception does not apply, and the title remained in the State, and passed to the plaintiff company.

*A. W. Paine*, for the defendant.


WALTON, J.   The plaintiffs have failed to satisfy us of their right to recover.   We think the timber sued for never became their property.

The conveyance to them was made 'subject to all the reservations' contained in the act of March 24, 1864 ; and one of the reservations contained in that act was of 'all timber and lumber and lands, granted or voted' by that or any previous legislature ; and we think the timber in question had been 'voted' within the meaning of that term as there used, and was, therefore, excepted out of the operation of the plaintiffs' deed.

The resolve of March 22, 1864, in favor of the Maine Wesleyan

Seminary and Female College, authorized the land agent to sell the timber and lumber upon any one-half township of land belonging to the State, and not already otherwise appropriated, and to pay the proceeds of the sale, not exceeding $10,000, to the trustees of said institution; in consideration of which, the trustees were to place at the disposal of the governor and council, five perpetual scholarships, free of tuition, to be given to returned soldiers, or their children, or to the children of such as had fallen in defense of their country. This sum, together with the sum of $5,000 to be raised by the trustees of the seminary and college, was to be permanently invested, the interest only to be expended.

The act of March 24, 1864 (two days later than the above resolve), authorized a transfer to the European & North American Railway Company, in a certain contingency, all the public lands lying on the waters of the Penobscot and St. John rivers, for the uses and purposes therein set forth; providing, however, that there should be excepted from said conveyance, and from the operation of that act, 'all timber and lumber and lands, granted or voted' by that or any preceding legislature.

Can any one doubt, that by the term, all timber and lumber, 'granted or voted' by that or any preceding legislature, it was intended to except from that conveyance, and from the operation of that act, the timber and lumber, which, only two days before, the legislature had authorized to be sold for the benefit of the seminary and college, and to secure a certain number of free scholarships for returned soldiers, or their children, or the children of such as had fallen in defense of their country? Is it possible that an object so worthy had been so soon forgotten? We think not. We think the words, 'all timber and lumber voted,' were intended to include the timber and lumber, which, by a vote of the same legislature, was to be sold for the purposes named, and that the same was thereby excepted, or reserved out of the timber or lumber or lands which, by virtue of the act named, was to be conveyed to the plaintiffs.

The learned counsel for the plaintiffs contends that the land

agent did not proceed according to law in selling the timber in question; that for this reason the title never vested in the pretended purchaser; that it remained in the State till the conveyance to them, and then passed to them under their deed of the sale on which it stood.

The argument would be sound if the reservation was made to depend upon a valid sale by the land agent. But such is not the fact. The reservation in the plaintiffs' deed is absolute—not dependent upon any such contingency. The grant to the college is indeed conditional, but the reservation in the conveyance to the plaintiffs is absolute, and a failure to appropriate the timber to the object which the legislature had in view when they reserved it, would not operate as a conveyance of it to the plaintiffs.

It is for the State alone, in its discretion, to take advantage of any forfeiture or error or failure in the proceedings subsequent to the grant.

This conclusion renders it unnecessary to examine critically to see whether the sale was strictly according to law or not. That the timber has, in fact, been sold, and the proceeds applied to the benefit of the college, thereby securing to returned soldiers; or their children, or the children of such as have fallen in defense of their country, five perpetual scholarships, free of tuition, is certain; and it must be a result gratifying to every one, to know that any mere informalities in carrying into effect so laudable an object will not defeat it.                    *Plaintiffs nonsuit.*

APPLETON, C. J.; CUTTING, KENT, and BARROWS, JJ., concurred.